UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In Re:

JEFFREY SHATUSKY,                                   Case No. 8:22-bk-00131-RCT
                                                    Chapter 7
    Debtor.

_____/

**JOINT (1) REPLY IN SUPPORT OF MOTION TO APPROVE POST-PETITION ATTORNEY FEE FINANCING ARRANGEMENT AND (2) OBJECTION TO U.S. TRUSTEE'S MOTION TO REVIEW ATTORNEYS' TRANSACTIONS WITH THE DEBTOR AND GRANT RELATED RELIEF**

    Debtor, Jeffrey Shatusky ("Debtor"), and Rebound Capital, LLC ("Movant", and together with the Debtor, the "Movants"), by and through undersigned counsel, reply in support of the Expedited Joint Motion to Approve Post-Petition Attorney Fee Financing Arrangement (Doc. No. 9) (the "Financing Motion") and object to the Motion to Review Attorneys' Transactions with the Debtor and Grant Related Relief (Doc. No. 19) (the "US Trustee Motion") filed by Mary Ida Townson, the United States Trustee for Region 21 (the "US Trustee").  In support, the Movants state as follows:

**INTRODUCTION**

    1.    The issue before the Court is whether the proposed financing arrangement violates any Section of the Bankruptcy Code and/or Rule of Bankruptcy Procedure.  As argued in the Financing Motion, the proposed financing arrangement complies with Section 329 of the Bankruptcy Code and Bankruptcy Rule 2017.  Moreover, as explained below, the financing arrangement does not violate Section 526(a)(4) of the Bankruptcy Code, and the Movants have made all necessary disclosures (and will continue to make all necessary disclosures) required by

1

Bankruptcy Rule 2016. Consequently, the Movants have complied with all applicable provisions of the Bankruptcy Code and Bankruptcy Rules and, as a result, the Court should authorize the Movants to proceed under the terms of the proposed financing arrangement.[1]

## BACKGROUND

2. The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on January 12, 2022 (the "Petition Date").

3. Prior to the Petition Date, on December 27, 2021, the Movant provided the US Trustee with copies of the proposed Attorney Fee Financing Agreement (the "Financing Agreement") and Contract for Post-Petition Legal Services in a Chapter 7 Bankruptcy Case (the "Fee Contract").

4. Between December 27, 2021 and January 11, 2022, undersigned counsel engaged in discussions with the US Trustee's office and offered to address any concerns or questions the US Trustee had regarding the Financing Agreement and Fee Contract. The parties' discussions were amiable; however, the US Trustee declined to provide the Movant with any specific feedback regarding the Financing Agreement or Fee Contract.

5. On January 17, 2022, the Movants filed the Financing Motion. On January 21, 2022, the US Trustee requested that the Movants answer approximately 25 questions concerning various aspects of the Financing Agreement and Fee Contract. The US Trustee also requested an extension of time to respond to the Financing Motion.

---

[1] The Movant is in the process of conferring with the Florida Bar regarding the proposed financing arrangement and may revise the agreement based on feedback received from the Florida Bar. Any modifications to the financing agreement based on feedback received from the Florida Bar will be disclosed to the Court through a supplemental Rule 2016(b) statement. At this time, the Movants only seek a determination that the financing agreement does not violate any Section of the Bankruptcy Code or Rule of Bankruptcy Procedure. The Movants do *not* request that this Court render any advisory opinion regarding whether the financing agreement complies with the Florida Rules of Professional Conduct.

6.      On January 24, 2022, the Movants provided written responses to each of the questions posed by the US Trustee and offered to revise or eliminate many of the terms of the Financing Agreement and Fee Contract that the US Trustee appeared to find objectionable. The Movants also agreed to continue the hearing on the Financing Motion and worked collaboratively with the US Trustee to establish a briefing schedule to ensure that the Court could decide the matter on a complete record.

7.      On February 7, 2022, the US Trustee filed the US Trustee Motion and an Objection (Doc. No. 18) to the Financing Motion. The vast majority of the issues raised by the US Trustee constitute "technical" objections to the form of the Fee Contract and Financing Agreement. In this regard, the Movants have revised the Financing Agreement and Fee Contract in an effort to address and resolve the bases for those objections. Clean and redline versions of the revised Financing Agreement and Fee Contract are attached hereto as **Composite Exhibit "A."**

8.      To further illustrate how the revised Financing Agreement and Fee Contract address and eliminate the "technical" issues raised in the US Trustee Motion, the Movants have summarized the revisions in the following chart:

| Provision of Agreement | US Trustee's Objection | Movants' Revision |
| --- | --- | --- |
| Fee Contract, ¶ 1.A. | US Trustee objects to sharing of attorney-client privileged communications by Debtor's counsel with Movant | Paragraph 1.A. has been revised to clarify that the limited sharing of information does not apply to attorney-client communications |
| Fee Contract, ¶ 1.B. | US Trustee objects to the Debtor's counsel withdrawing from the bankruptcy case in the event that the Movant commences a collection action | Paragraph 1.B. has been revised to clarify that the Debtor's counsel will continue to represent the Debtor in the bankruptcy case even if the Movant files a collection action |
| Fee Contract, ¶ 3(l) | US Trustee objects to the Debtor's counsel charging $150.00 to attend continued 341 meetings | Paragraph 3(l) has been revised to eliminate the additional fee for attending continued Section 341 meetings |

| | | |
|---|---|---|
| Fee Contract, ¶ 5 | US Trustee objects to the manner in which the Debtor's counsel proposed to prosecute violation actions and the rates charged | Paragraph 5 has been revised to eliminate the objectionable terms and to clarify that any representation of the Debtor in a violation action will occur through a separate retainer agreement |
| Fee Contract, ¶ 6 | US Trustee objects to the statement that the firm's fee is non-refundable despite the Court's authority under Section 329 of the Bankruptcy Code | Paragraph 6 has been revised to clarify that the firm's billing and refund policies are all subject to review by the Bankruptcy Court, Florida Bar, and other courts of competent jurisdiction |
| Fee Contract, ¶ 13 | US Trustee objects to the Debtor not being offered the right to opt-out of automated messages | Paragraph 13 has been revised to expressly authorize the Debtor to opt-out of receiving such communications |
| Paragraph 14.D. | US Trustee objects to the sharing of attorney-client privileged information with Movant | Paragraph 14.D. has been revised to clarify that the sharing of information applies to basic publicly available financial information and contact information and that the firm will not share privileged information with the Movant |
| Paragraph 14.F. | US Trustee objects to the Debtor's counsel withdrawing from the bankruptcy case in the event the Movant commences a collection action | Paragraph 14.F. has been revised to clarify that the firm will continue to represent the Debtor in the bankruptcy case notwithstanding any collection action filed by the Movant. |

9. Putting aside the "technical" issues that the Movants believe have been addressed above, the remainder of the issues raised by the US Trustee can be summarized as follows:

    a. The US Trustee argues that the financing arrangement is prohibited under Section 526(a)(4) and the Eleventh Circuit's decision in *Caldwell v. Kaufman*, 886 F.3d 1153 (11th Cir. 2018);

    b. The US Trustee argues that the fees charged by the Debtor's counsel are unreasonable under Section 329 of the Bankruptcy Code and that there has been inadequate disclosure under Bankruptcy Rule 2016(b);

4

  c. The US Trustee argues that the Debtor has insufficient disposable income to pay the post-petition finance charges due under the Financing Agreement;

  d. The US Trustee argues that the Debtor's counsel has improperly increased his fee to recover the $120 processing fee charged by the Movant and/or that the payment of the processing fee constitutes improper fee sharing; and

  e. The US Trustee argues that the Financing Agreement will be rendered in immediate default based on the Debtor's bankruptcy filing;

10. Each of these remaining issues are addressed, in turn, below.

## ARGUMENT AND MEMORANDUM OF LAW

### A. The Financing Agreement and Fee Contract do not violate Section 526(a)(4).

11. Section 526(a)(4) of the Bankruptcy Code states, in pertinent part, that:

> A debt relief agency shall not . . . . advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

11 U.S.C. § 526(a)(4) (emphasis added). The term "debt," as that term is used in Section 526(a)(4), is defined as "liability on a claim." 11 U.S.C. § 101(12). Section 727(b), in turn, provides that "a discharge . . . discharges the debtor from all *debts* that arose before the date of the order for relief . . . and any *liability on a claim* that is determined under section 502 of this title as if such claim had arisen before the commencement of the case. . ." 11 U.S.C. § 727(b) (emphasis added). Given that the term "debt" is defined in reference to liability on a "claim," and that such pre-petition "debts" and "claims" are subject to the discharge under Section 727(b), it is clear that the prohibitions in Section 526(a)(4) apply to pre-petition "debts," not post-petition obligations that are unaffected by the discharge under Section 727(b).

12. On this point, the case of in *Caldwell v. Kaufman*, 886 F.3d 1153 (11th Cir. 2018) is particularly instructive. In *Caldwell*, a bankruptcy attorney *affirmatively advised* his client to pay for *pre-petition* bankruptcy services using a *pre-petition* credit card. *Id.* at 1161. In essence, the attorney advised his client to incur a dischargeable pre-petition debt to pay for a fee that he earned pre-petition. *Id.* On those facts, the Eleventh Circuit held that Section 526(a)(4) prohibited the attorney "from giving [his] clients '*affirmative advice*' to incur more debt in order to pay for bankruptcy-related representation." *Id.* (emphasis added). To hold otherwise, as the court observed, could compromise the debtor's fresh start by exposing the debtor to dischargeability litigation under Section 523 (for incurring debt without the intent to repay) and would otherwise diminish the estate from which other pre-petition creditors could be repaid. *Id.* at 1160.

13. Here, unlike in *Caldwell*, the Debtor's counsel did not "affirmatively advise" the Debtor to incur pre-petition debt to pay for pre-petition legal services. Notably, the term "advise" means "to give advice; to offer an opinion as worthy or expedient to be followed; to counsel." Advise, Ballentine's Law Dictionary. Under the bifurcated structure of the Fee Contract, the Debtor's counsel provided his client with three (3) options to pay for the firm's post-petition services: (1) decline to pay a post-petition fee and either retain alternative counsel or proceed pro se; (2) pay the post-petition fee from the Debtor's own funds; or (3) finance the post-petition fee pursuant to the terms offered by the Movant.[2] The Debtor's counsel did not advise or instruct the Debtor which option to choose. Moreover, unlike in *Caldwell*, the fee will be earned and paid post-petition and, as a result, any obligation arising therefrom constitutes a post-petition obligation. Consequently, the Debtor has not incurred "more [pre-petition] debt" in violation of Section

---

[2] The Fee Contract has two components: a pre-petition component and a post-petition component. The pre-petition component discloses the Debtor's options for paying for post-petition services; however, all post-petition fees are earned and paid for post-petition.

526(a)(4), and the payments due to the Movant will not diminish any recovery otherwise available to pre-petition unsecured creditors. In sum, the absence of any "affirmative advice" to incur more pre-petition debt clearly distinguishes the Financing Agreement and Fee Contract from *Caldwell*.

14. Finally, to the extent that the US Trustee argues that Section 526(a)(4) categorically prohibits Chapter 7 debtors from incurring post-petition debt to pay for bankruptcy services, such argument is untenable in light of Judge Williamson's ruling in *Clark & Washington* and the Southern District's *en banc* ruling in *In re Brown*. *See Walton v. Clark & Washington, P.C.*, 469 B.R. 383, 387-88 (Bankr. M.D. Fla. 2012) (approving bifurcated fee agreements in Chapter 7 cases subject to counsel complying with certain disclosure requirements); *see also In re Brown*, 631 B.R. 77, 105 (Bankr. S.D. Fla. 2021) (finding that bifurcated fee agreements that comply with the terms of this order "do not violate the Bankruptcy Code or Bankruptcy Rules, this Court's Local Rules, or the Florida Bar Rules."). Significantly, under any "bifurcated fee agreement," the debtor necessarily incurs a post-petition obligation, i.e. a debt, to pay their legal counsel's fee. There is no practical difference between a debtor incurring a debt directly to their legal counsel or to a third-party financing company. If anything, the involvement of a third-party financing company eliminates the risk that the debtor's counsel may have to withdraw from the representation post-petition due to non-payment.

15. Simply put, the Financing Agreement offered by Movant *guarantees* the availability of legal counsel and eliminates the risk that non-payment will jeopardize the Debtor's bankruptcy discharge. If Section 526(a)(4) prohibited a debtor from incurring post-petition debt to pay legal fees, then bifurcated fee agreements would be per se unlawful. But they are not, as recognized by *Clark & Washington* and *In re Brown*, because Section 526(a)(4) only refers to pre-

petition debts and the prohibition only extends to "affirmatively advising" the debtor to incur such debts.

### B. The fee charged in this case is per se reasonable under Section 329(b) and there has been full and adequate disclosure under Bankruptcy Rule 2016(b).

16.     The US Trustee argues that the $2,000.00 fee charged by the Debtor's counsel for representation in this Chapter 7 case is unreasonable and that the Debtor's counsel has not complied with the disclosure requirements of Bankruptcy Rule 2016(b). In so arguing, the US Trustee does not seriously contend the amount of the fee is, itself, unreasonable. Instead, the US Trustee argues that the short period of time that elapsed between the Debtor signing the post-petition Fee Contract and the filing of the Schedules and SOFA demonstrates that the work had already been performed such that the Fee Contract was illusory. With respect to Bankruptcy Rule 2016(b), the US Trustee notes that the SOFA omits that the Debtor paid the filing fee through his counsel and that the Rule 2016(b) statement does not disclose the payment of the fee by the Movant under the terms of the Financing Agreement. The Movants respond to both issues, in turn, below.

17.     With respect to the reasonableness of counsel's fee, it is undisputed that the Debtor's counsel has performed (and will continue to perform) the services required under the Fee Contract, including preparation and filing of the Schedules and SOFA and preparation for and attendance at the Section 341 meeting. The US Trustee does not seriously contend that $2,000.00 is an unreasonable or excessive fee for performing those services. Instead, the US Trustee seeks to penalize the Debtor's counsel for having apparently "worked ahead," i.e. by preparing the necessary schedules and statement of financial affairs before the Debtor signed the Fee Contract. Under the US Trustee's logic, if an attorney performs services for a client before the client actually agrees to pay for the services, the attorney is obligated to deliver the services to the client free of charge. However, in actuality, the Debtor's counsel had no obligation to deliver the Schedules or

8

SOFA to the Debtor unless or until the Debtor signed the Fee Contract. So long as the services were performed post-petition, which was the case here, the Debtor's counsel was free to "work ahead" with the hope and expectation that his client would pay for the work that was being performed. Section 329(b) does not require that the Debtor's counsel disgorge his compensation because the client agreed to pay for the work he performed in this case.

18. As for the US Trustee's argument that the Debtor's counsel has failed to comply with his obligations under Rule 2016(b), the 2016(b) statement filed in this case is true, accurate, and complete in all material respects. The Debtor paid the filing fee through counsel, which is fully disclosed in the Rule 2016(b) statement, and counsel has not yet received any compensation from the Movant under the Financing Agreement. Admittedly, the SOFA contains a scrivener's error at Item 16, which omits the payment of the filing fee to counsel by the Debtor. However, the payment of the filing fee is properly disclosed in the Rule 2016(b) statement and the omission of that information from the SOFA was inadvertent. As for the payment of counsel's fee, the Movant is ready, willing, and able to fund the fee that is due under the Financing Agreement upon resolution of this contested matter by the Court. Within 14 days of receiving any such compensation from the Movant, the Debtor's counsel will file an updated Rule 2016(b) statement as required by the rule.

**C. The Debtor has sufficient disposable income to pay the amounts due under the Financing Agreement.**

19. Next, the US Trustee argues that the Debtor lacks sufficient disposable income to repay the $2,000.00 fee pursuant to the terms of the Financing Agreement. This argument has some superficial merit, but again misses the mark. True, the Debtor's Schedule I and Schedule J reflect that, as of January 2022, the Debtor's household disposable income was approximately $19.00/month. However, the Schedule I and Schedule J also reflect that the Debtor's household

9

has monthly income of $3,851.98, compared to only $183.00 in monthly payments due under the Financing Agreement. There are multiple areas in the Debtor's Schedule J where expenses can be reduced to accommodate the payments due under the Financing Agreement, including Item No. 6(c) (streaming services) and Item No. 13 (entertainment, clubs, recreation, newspapers, magazines, and books). The Movants understand and appreciate that the payments due under the Financing Agreement will require the Debtor to make certain sacrifices. The Debtor has determined that those sacrifices are worthwhile, in light of the benefits of obtaining a bankruptcy discharge and elimination of more than $10,000.00 in unsecured pre-petition debt, and the US Trustee has no basis to question the Debtor's judgment in such regard.

**D. Counsel has not increased (or discounted) his fee to absorb or defray the processing fee charged by the Movant and there is no improper "fee sharing."**

20. The US Trustee speculates that the Debtor's counsel has increased (or possibly discounted) his fee to account for the $120.00 processing fee that he will be charged by the Movant. The US Trustee's contention appears to be based on the fact that the Debtor offered to accept $1,800.00, if the Debtor paid the entire fee pre-petition, but requested a post-petition fee of $2,000.00 under the Fee Contract. It is true that the Debtor's counsel offered this particular Debtor a $200.00 discount for paying the entire fee pre-petition. The Debtor's counsel has many reasons for charging a particular client a particular fee. Some cases are more complex than others and require additional work. Some clients are more responsive and easier to work with than others. Law firm economics also factor into the fee that is offered or charged. Those myriad of factors, and not the $120.00 processing fee charged to Debtor's counsel by the Movant, resulted in the fee that was charged in this case.

21. With respect to the US Trustee's allegation of possible "fee sharing" between the Movant and the Debtor's counsel, the processing fee is not deducted or paid from the amounts

financed by the Movant.  To the contrary, the Movant will separately invoice the Debtor's counsel for any processing fees on a periodic basis, and the processing fees will be paid from counsel's general revenue account.  Moreover, at present, the Debtor's counsel does not intend to increase or discount his fee to accommodate the $120.00 processing fee charged by the Movant.  Even if he did, the Florida Rules of Professional Conduct state that "[a] lawyer or law firm may accept payment under a credit plan," and that the lawyer "*may charge clients the actual charge the credit plan imposes on the lawyer for the client's transaction*." Fla. R. Prof. C. 4-1.5(h) (emphasis added).  As set forth in Rule 4-1.5(h), the Debtor's counsel could charge his clients the $120.00 processing fee assessed by the Movant.  But the Debtor's counsel has no plans to do so at this time, and the fees quoted in this case had nothing to do with the processing fee charged by the Movant.

### E. The Movant does not intend to default borrowers because they filed for bankruptcy.

22.     Finally, the US Trustee suggests that the Financing Agreement may be unworkable because the Movant can declare its borrowers in immediate default for having filed bankruptcy and assess them additional fees and penalties.  This argument appears to be based on the inclusion of certain default language at Section 2(b)(3) of the Financing Agreement.  But that language refers to a *future* bankruptcy case, not this already-filed case, and the Movant has no intention of defaulting its borrowers for having previously filed bankruptcy.  To the contrary, the purpose of the Financing Agreement is to pay fees incurred in an already-filed bankruptcy case.  Of course, were this entire arrangement some nefarious conspiracy to place borrowers in default to collect additional fees, the Court and the US Trustee would assuredly intervene to protect the reasonable expectations of the parties.  But no such conspiracy exists.  The Debtor's counsel intends to diligently and competently represent his clients.  The Movant intends to make targeted loans to

Chapter 7 debtors and to be repaid in 12 monthly payments of principal and interest. The arrangement is intended to benefit all parties.

WHEREFORE, the Debtor respectfully requests that the Court grant the Financing Motion, deny the US Trustee Motion, and grant the parties such additional relief as is just and proper.

DATED this 14th day of February 2022.

| RESPECTFULLY SUBMITTED, | RESPECTFULLY SUBMITTED, |
|---|---|
| /s/ *Erik Johanson* | /s/ *Alan Borden* |
| Erik Johanson, Esq. | Alan Borden, Esq. |
| Florida Bar No. 106417 | Florida Bar No. 58250 |
| ERIK JOHANSON PLLC | Richard Feinberg, Esq. |
| 3414 W Bay to Bay Blvd | Florida Bar No. 802808 |
| STE 300 | Debt Relief Legal Group, LLC |
| Tampa, Florida 33629 | 901 W. Hillsborough Ave |
| (813) 210-9442 | Tampa, FL 33603 |
| ecf@johanson.law | (813) 231-2088 |
| *Counsel for Movant* | aborden@1800debtrelief.com |
|  | *Counsel for Debtor* |

## FILER'S ATTESTATION

Pursuant to Local Rule 1001-2(g)(3) regarding signatures, Erik Johanson attests that concurrence in the filing of this paper has been obtained.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served by CM/ECF service on all parties who received electronic service in the ordinary course of business on February 14, 2022.

/s/ *Erik Johanson*
Erik Johanson